# CAHILL & GOETSCH, P.C.
## ATTORNEYS AT LAW

SCOTT E. PERRY

43 TRUMBULL STREET
NEW HAVEN, CONNECTICUT 06511

(203) 777-1000
FAX: (203) 865-5904

COPY

October 28, 2003

*__Via Fax__*

Anthony D. Sutton, Esq.
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, Connecticut  06905

Lori A. McCarthy, Esq.
Flynn & Associates, P.C.
189 State Street, 6th Floor
Boston, Massachusetts 02109

RE:    *Fuda vs. Metro-North, et al.*

Dear Counsel:

Enclosed is a copy of an April 24, 2001 Metro-North Hearing Test Notification Report that was given to Mr. Fuda.

Sincerely,

Scott E. Perry

SEP:md
Enclosure

HESc

# HEARING TEST NOTIFICATION REPORT

Co.: **METRO-NORTH RAILROAD**          Co. Code: **MTR**  Plant: **BREWSTER**          Plant Code: **N04**  Test Date: **04/24/01**
Name: **ROBERT FUDA**                                          SSN: **103215000**          Sex: **M**          Test Time: **14:11**
Dept: **BREW** ·                                                  ID#:  **103215**          Shift: **2**          Birth Date: **06/06/42**
Job: **LABORER**                        State: **NY**  Current Test dBA TWA:                          Hire Date: **09/01/74**

|  | Right Ear | Left Ear |
|---|---|---|
| Results of looking in your ears with an otoscope (earlight): | *No Apparent Problem* | *No Apparent Problem* |
| Hearing Status for high pitch sounds (3k,4k,6k):  *(whistles; birds; turn signals; some speech sounds)* | *Moderate* | *Moderate* |
| Hearing Status for speech range (500,1k,2k,3k):  *(most voices; most everyday sounds)* | *Normal* | *Normal* |
| Change in hearing from baseline test, STS (2k, 3k, 4k) - With Age Adjustment: | *No* | *No* |
| *This was your baseline test so no comparison was made* | | |
| 25dB Shift With Age Adjustment:  (2k, 3k, 4k) | *No* | *No* |

## IT IS EXTREMELY IMPORTANT THAT YOU ALWAYS WEAR HEARING PROTECTION WHENEVER YOU ARE EXPOSED TO LOUD NOISE, BOTH ON AND OFF THE JOB.

### Graph of Hearing Test Results (Audiogram)



Audiometer: Make: MONITOR - MI5000          Serial No.: 40659          Annual Calibration Date: 07/20/00
Tester: Van 0008 / Tech: JIM STUDENIC / Cert. # 26466

1._____  I have been trained in 1) The effects of noise on hearing; 2) purpose of the hearing test; and 3) purpose of hearing protectors, type available, attenuation and their fit and care.

2._____  I have been trained and fitted with hearing protectors. _____ Demo Only

3._____  I have received a copy of this report.

_____                                  _____
Employee Signature                                                              Date

*HESc Preventive Services Division*

## CAHILL & GOETSCH, P.C.
### Attorneys At Law

George J. Cahill, Jr.
Charles C. Goetsch
Scott E. Perry

43 Trumbull Street
New Haven, CT 06511
Phone: 203-777-1000
Fax: 203-865-5904

### *FAX COVER MEMO*

| | |
|---|---|
| **TO:** | Lori A. McCarthy |
| **FAX NUMBER:** | 617-722-8254 |
| **FROM:** | Scott E. Perry |
| **TELEPHONE** | 203-777-1000 |
| **DATE:** | October 28, 2003 |
| **RE:** | *Fuda* |

_____      2_____ **Pages to Follow**

**MESSAGE:**

The information contained in this facsimile is confidential and privileged, and is intended only for the use of the named receiver. If you are not the named receiver or the person responsible for delivering this facsimile to the named receiver, you are notified that any use of this fax or its contents, including any dissemination or copying, is strictly prohibited. If you have received this facsimile in error, please immediately notify Cahill & Goetsch by telephone at 203-777-1000, and return the original to us at the New Haven address via first class mail.

Page 1

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

```
----------------------------------x
FRANCIS E. BAKUTIS,              :
          Plaintiff,            :
                                    Civil Action No.
     -versus-                   : 02 CV 1877 (SRU)
METRO-NORTH RAILROAD COMPANY; :
CONSOLIDATED RAIL CORPORATION;
and AMERICAN FINANCIAL GROUP, :
INC., f/k/a AMERICAN PREMIER
UNDERWRITERS, INC., f/k/a
PENN CENTRAL CORPORATION,        :

          Defendants.           :
----------------------------------x
```

Deposition of FRANCIS EDWARD
BAKUTIS, taken pursuant to the Federal
Rules of Civil Procedure, at the law
offices of Cahill & Goetsch, P.C., 43
Trumbull Street, New Haven, Connecticut,
before Gerald Gale, L.S.R. 00027,
Registered Merit Reporter and a
Notary Public in and for the State of
Connecticut, on September 9, 2003, at
11:05 a.m.

AKUTIS v. METRO-NORTH

Page 150

1  from tinnitus, ringing in the ears, since you
2  started working. Do you know where he would
3  have gotten that from?
4      A.  I was referring to that particular job
5  I was referring at the time.
6      Q.  What job was that?
7      A.  Running the Burro crane 4005.
8      Q.  How about the 4000 --
9      A.  I meant that job in general.
10     Q.  That was the job during which you were
11 using the 4004 and 4005?
12     A.  Right.
13     Q.  When you started using the 4004, did
14 you start to notice ringing in your ears when
15 you started using that?
16     A.  Not when I first started using it.  It
17 was later on when I started using both the
18 cranes.
19     Q.  When was that, do you recall?
20     A.  The fall of 2000, right.
21         MS. McCARTHY:  Mark as Exhibit 32
22 office notes of Dr. Boey dated 11/8/2000, two
23 pages worth.
24         (Defendants' Exhibit 32 marked
25      for identification.)

Page 151

1      Q.  Before I show you this exhibit, were
2  you also complaining of ear lesions at the time
3  that you saw Dr. Boey?
4      A.  No.
5      Q.  Did he ever tell you that you had any
6  ear lesions?
7      A.  He told me that I did have a --
8          MR. PERRY:  Objection to the
9  form.
10         You can answer the question.
11     A.  Yes, he examined my years and said I
12 had some lesions there.
13     Q.  Did he give you any medication for
14 that?
15     A.  I don't recall if he did.  He might
16 have prescribed something to me, but I don't
17 recall.  I usually don't take medication unless
18 it's absolutely necessary.
19     Q.  Dr. Boey also notes -- Withdrawn.
20         Were you also experiencing
21 blockage at the time of your visit to Dr. Boey?
22     A.  I don't understand what you mean by
23 blockage.
24     Q.  Did your ears feel like they were
25 blocked?

Page 152

1      A.  They were bothering me.  It was
2  starting to ring and I was losing, you know, the
3  hearing, getting difficult for me to understand
4  conversations and stuff.
5      Q.  When you first went to go and visit
6  Dr. Boey in November of 2000, you had been
7  experiencing some loss in your hearing in
8  addition; is that right?
9      A.  Well, when I started going to see him,
10 with Dr. Lambe, when I had seen Dr. Lambe is
11 when I started experiencing my hearing loss.
12     Q.  Sometime before you saw doctor --
13     A.  Shortly before I seen him.
14     Q.  How long before?
15     A.  A couple of weeks.
16     Q.  I am going to show you what's been
17 marked as Defendants' Exhibit No. 32, which is
18 two pages, and there are notes of Dr. Boey's,
19 and in his notes he says that you have been
20 complaining of -- you noticed ringing in your
21 ears for approximately one year prior to
22 visiting him?
23         MR. PERRY:  Objection to form.
24         You can answer the question.
25         MS. McCARTHY:  There is no

Page 153

1  question pending.
2      Q.  Had you been experiencing ringing in
3  your ears for one year prior to visiting
4  Dr. Boey?
5      A.  No, not a year.  Sometime that year, I
6  started experiencing it, you know.
7      Q.  Do you know where he would have gotten
8  one year from that he wrote down in his notes?
9      A.  I don't know.  I may have answered in
10 a generalization.
11     Q.  You may have told him you started
12 having ringing in your ears about a year ago?
13     A.  I think I told him I started getting
14 ringing in my ear this year, started happening
15 this present year.
16         MS. McCARTHY:  If I could have
17 marked as Defendants' Exhibit 33 a standard
18 audiological evaluation dated November 8, 2000.
19         (Defendants' Exhibit 33 marked
20      for identification.)
21     Q.  Prior to visiting Dr. Boey, had you
22 been experiencing crackling or popping in your
23 ears?
24     A.  No, not -- I don't recall.
25     Q.  Do you recall if you told Dr. Boey

SANDERS, GALE & RUSSELL

BAKUTIS v. METRO-NORTH

September 9, 2003

---

Page 154

1  that you had been having crackling or popping in
2  your ears?
3      A.  I don't recall that. I may have, I
4  don't know.
5      Q.  Also Dr. Boey notes in his letter to
6  Dr. Lambe that ear lesions were detected on a
7  routine examination. Was that the exam of
8  Dr. Lambe?
9      A.  Dr. Lambe told me he had seen some
10 kind of polyps in my ear canal, he didn't know
11 what he was -- he said he wasn't a specialist,
12 and then referred me to Dr. Boey.
13     Q.  Also Dr. Boey notes in his report to
14 Dr. Lambe that he prescribed you Claritin D for
15 the blockage you were having in your ears. Does
16 that sound familiar to you?
17        MR. PERRY:  Objection to form.
18        You can answer?
19     A.  He prescribed something, but I don't
20 recall what it was.
21     Q.  Do you recall ever taking Claritin D
22 for any reason?
23     A.  I don't recall.
24     Q.  Where do you typically fill your
25 prescriptions if you have a prescription?

---

Page 155

1      A.  It's hard to say. Knock on wood, I
2  don't get sick that often and I don't go to
3  doctors and get prescriptions filled, so if I do
4  go, I'll go to a CVS or local pharmacy.
5      Q.  You don't have a regular pharmacist?
6      A.  No, I don't.
7      Q.  Let me show you what's been marked as
8  Exhibit 33, standard audiologic evaluation.
9  Have you ever seen this document before?
10     A.  I am not sure. I have documents from
11 the company, too, then sent me copies, and I am
12 not sure if I have seen it. I am assuming I
13 looked at it.
14     Q.  Did you ever receive records from
15 Dr. Boey?
16     A.  Yes, when I -- after office an visit,
17 he gave me -- I believe he gave that to me and
18 also another form. I guess it was a payment
19 form.
20     Q.  Did you ever receive any other medical
21 records from Dr. Boey other than what he gave
22 you on that --
23     A.  No.
24     Q.  Dr. Boey noticed that you did a lot of
25 swimming; is that correct?

---

Page 156

1      A.  Yes.
2      Q.  Swimming both ocean and lake; is that
3  correct?
4      A.  Yes.
5      Q.  What lake do swim at?
6      A.  Various lakes on Cape Cod, ponds, and
7  wherever I can go to a lake to swim. When I get
8  a chance, I will.
9      Q.  You have been doing that for about 30
10 years; is that right?
11     A.  Yes.
12     Q.  How often do you swim?
13     A.  In the summertime whenever I can.
14 Once or twice a month anyway.
15     Q.  Did Dr. Boey discuss with you that
16 swimming in lakes and oceans could contribute to
17 your hearing loss?
18        MR. PERRY:  Objection to form.
19        You can answer.
20     A.  Yes, he did. He mentioned it was from
21 cold water. He said it was a common occurrence
22 that people that swim in cold water get those
23 lesions or bumps or whatever they are.
24     Q.  Do you have any brothers and sisters?
25     A.  Yes.

---

Page 157

1      Q.  Charles Bakutis you testified about,
2  correct?
3      A.  Right.
4      Q.  Does Charles have any hearing loss, do
5  you know?
6      A.  Not that I know of.
7      Q.  Has he ever complained to you about
8  having difficulty hearing?
9      A.  No.
10     Q.  Any other brothers and sisters?
11     A.  I have a sister.
12     Q.  What is her name?
13     A.  June.
14     Q.  What is her last name?
15     A.  I believe she took the family name
16 back. She has been divorced.
17     Q.  Does June suffer from any hearing
18 loss, do you know?
19     A.  Not that I know of, no.
20     Q.  You have another brother, correct?
21     A.  I have an older brother. He is
22 deceased.
23     Q.  When did he die?
24     A.  He died about four or five years ago.
25     Q.  Was his death health-related? Did he

---

ANDERS, GALE & RUSSELL

40 (Pages 154 to 157)

(203)624-4157

# CAHILL & GOETSCH, P.C.

### ATTORNEYS AT LAW

SCOTT E. PERRY

 COPY

43 TRUMBULL STREET
NEW HAVEN, CONNECTICUT 06511

(203) 777-1000
FAX: (203) 865-5904

October 28, 2003

RECEIVED
OCT 3 0 2003
By_____

Anthony D. Sutton, Esq.
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street
P.O. Box 3057
Stamford, Connecticut 06905


Lori A. McCarthy, Esq.
Flynn & Associates, P.C.
189 State Street, 6th Floor
Boston, Massachusetts 02109

RE:    *Timothy Sweeney vs. Metro-North, et al*.

Dear Counsel:

Enclosed are Mr. Sweeney's responses to Conrail and Metro-North's interrogatories. Also enclosed are a November 14, 2002 Delivery Receipt from Macary's Beltone Hearing Aid Center; a MetLife Benefits explanation re: Hearing Aids; and a copy of Mr. Sweeney's check dated November 1, 2002 in the amount of $1,390 to Beltone for hearing aids; and a copy of Mr. Sweeney's Beltone Card.

The plaintiff's total claim at trial for the hearing aids is $2,390 in light of the collateral source rule.

Also, enclosed are Metro-North hearing records Mr. Sweeney obtained in May of 2002. I have also enclosed a December 2, 1999 Medical Evaluation Results Form and a December 2, 1999 Hearing Test Form received by Mr. Sweeney in December of 1999.

Sincerely,

Scott E. Perry

SEP:md
Enclosures

# DELIVERY RECEIPT

Seller's Name    **MACARY'S BELTONE HEARING AID CENTER**

Seller's Address    4063 MAIN STREET
BRIDGEPORT, CONN. 06606    (720 WOLCOTT STREET
371-7445    WATERBURY, CONN 06705
756-8606)

The following items have been delivered by the seller and receipt is
acknowledged by the undersigned purchaser:

_2_    _Beltone_    Hearing Aid(s)
Quantity   Brand

     Model(s) _Opera plus CSP-TIP_

     Serial No(s). _Lt# 02424776 Rt# 02424775_

| | |
|---|---|
| User Instructional Brochure | Ear Mold(s) |
| Instrument Warranty | Batteries |

THE BUYER HAS THE RIGHT TO CANCEL THIS
PURCHASE OR RENTAL FOR ANY REASON AT ANY
TIME PRIOR TO MIDNIGHT OF THE THIRTIETH
CALENDAR DAY AFTER RECEIPT OF THE HEAR-
ING AID. A CANCELLATION FEE OF TWELVE PER
CENT OF THE PURCHASE PRICE MAY BE IMPOSED
     **In the event of the cancellation of such sale or rental,**

the seller may retain $____ _150.00 Each_ ____ (not to exceed

twelve percent of the purchase price), plus $ ____ _—0—_ ____ for

the ear mold(s) and $ ____ _—0—_ ____ for the batteries provided to the
purchaser. Therefore, the purchaser has the right to cancel this
purchase or rental by returning the hearing aid(s) described herein.
Such hearing aid(s) must be returned in the same condition as when
purchased, ordinary wear and tear excepted. At the option of the
purchaser a free adjustment of such hearing aid(s) may be
demanded. Time is of the essence with respect to these rights. Such
return may be made, or such free adjustment demanded, no later

than midnight of ____ _12-14_ ____ 20 _0 2_. All terms of

the Purchase Agreement dated ____ _11-1_ ____,

20 _02_ are hereby incorporated by reference into this Delivery
Receipt.

                             _balance_ $2200°°
                             ~~Received $~~

_X Timothy T. _____      **MACARY'S BELTONE HEARING AID CENTER**
Purchaser's Signature      Seller

                         By _Mark Macary_
Purchaser's Address      Signature

Date __ _11/14/02_ __      _#185_
                         Seller's License Number

97413 96899 00000084770046322772001 - 0001



# MetLife®

GROUP #   84770    MTA POLICE/METRO-NORTH/LONG ISLAND RAIL    CLAIM YEAR:   2002    02

**Explanation of Dental Benefits**

This is not a bill.  It is an explanation of how MetLife computed the payment for your recent dental services.

**EMPLOYEE'S NAME**
TIMOTHY SWEENEY

**EMPLOYEE'S I.D. NUMBER**
046322772

**SERVICES RENDERED BY**
PROVIDER

**PATIENT'S NAME/RELATIONSHIP**
TIMOTHY        SELF

**DATE PROCESSED**
DECEMBER 9, 2002

**FILE REFERENCE**
2112100139 9

| DATE SERVICE PERFORMED | TOOTH # /AREA | PROCEDURE CODE | FEE CHARGED | COVERED EXPENSE | PLAN BENEFIT | | DESCRIPTION OF SERVICE/ COMMENTS |
|---|---|---|---|---|---|---|---|
| 11/01/02 | | 09996 | 1795.00 | 500.00 | SCHD | 500.00 | HEARING AID |
| 11/01/02 | | 09996 | 1795.00 | 500.00 | SCHD | 500.00 | HEARING AID |
| TOTALS | | | 3590.00 | 1000.00 | | 1000.00 | |

METLIFE HAS MADE DENTAL CLAIM FORMS AVAILABLE WHEN NEEDED THROUGH THE FOLLOWING SOURCES:
1) A TOLL-FREE NUMBER OF 1-800-942-0854, OR 2) THE METLIFE DENTAL WEBSITE (www.metlife.com/dental).

"COVERED EXPENSE" IS THE AMOUNT ALLOWABLE UNDER THE DENTAL BENEFIT PLAN.

$1000.00 PAID TO TIMOTHY SWEENEY

TO DATE, $1,000.00 HAS BEEN PAID TOWARDS THE MAXIMUM OF $1,000.00.

Save for your tax purposes. This is the only statement to be issued.

## Notice to Employee

This claim was processed in accordance with the terms of your Employee Benefit Plan. In the event the claim has been denied in whole or in part, you can request a review of your claim at no cost to you. This request for review should be sent to MetLife, Group Claims Review, P.O. Box 14589, Lexington, KY 40512, within 180 days after you receive notice of any adverse decision. When requesting a review, please state the reason you believe the claim was improperly denied, and whether you are requesting a first or second review. You may submit any comments, questions, documents, or information you deem appropriate.

Your claim will receive a full and fair review involving someone other than the one who initially made the adverse decision or a subordinate of the original reviewer. If there are medical considerations involved in the claim, we will consult appropriately trained and qualified professionals to make those decisions. We will review your claim within 30 days of receipt and provide you with a written or electronic version of our decision in a manner you can understand. You have the right to request copies of all documents, records, and other information we used in evaluating your claim at no cost to you.

If we deny your first appeal in whole or in part, you may request a second level appeal and we will respond to that request within a 30 day time period. At the end of the second level appeal, if you are not satisfied with our decision you may have rights under Section 502 (a) of ERISA to bring a civil action if you so desire.

Your state may have additional internal appeal and/or external review processes available to you to resolve disputes. Please contact your state regulatory authority for information. Additionally, you and your plan may have other voluntary alternative dispute resolution options available. Please contact your employer for information

**Benefits are consistent with plan provisions and are not to be considered as treatment recommendations. Treatment decisions are the responsibility of the patient and the dentist.**

K5700A.SCRE (09/02)

If benefits are denied in whole or part, see "Notice to Employee" on reverse side.
**Please save this statement for your tax records.**
K5279A (07/01)

1430

15.00

TIMOTHY J. SWEENEY
ANNE P. SWEENEY
9 BLUE TRAIL DR
PROSPECT, CT 06712

1432

Date November 24, 2002

Pay to the
Order of _BelTone_                    $ 1390.00

One Thousand Three Hundred Ninety & no/100 Dollars

WEBSTER BANK

Webster Plaza, Waterbury CT 06702

For _____        Timothy J. Sweeney Jr

⑆211170101⑆10 0013142403⑈ 1432 ⑉00001139000⑉

Page    5



## Beltone

BelCare PROGRAM



**Bel Care** A Commitment To Customer Satisfaction

The person named on this card is entitled to all services of Beltone's BelCare Program. This card is to be honored at any authorized Beltone Hearing Aid Center. For service and Beltone batteries, call the phone number shown. On the road, call 1-800-BELTONE for the nearest Beltone Center. Ask your dispenser about extended warranties, LS&D coverage, and other premium service programs.

TELEPHONE NO. ( 203 756-8906

BATTERY TYPE: LEFT: B312   RIGHT: B312

OUTPUT LEVEL: LEFT: CSØ HP   RIGHT: CSØ HP